**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN SCHOLL, BREANNA AIRGOOD, individually, and as parents and natural guardians of B.S., | ) ) ) ) | 2:25-cv-2 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| KELLY PAVILONIS *et al.*, | ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM ORDER</u>**

B.S., the child of Plaintiffs Ryan Scholl and Breanna Airgood, was born on December 31, 2024. ECF 11, ¶ 1.[1] Two days later, he was removed by state officials from Ms. Airgood's physical custody while she remained admitted at the hospital. The child was taken into state custody, after caseworkers at the Allegheny County Office of Children, Youth and Families (OCYF), Kellie Pavilonis and her supervisor Candice Dewberry, filed an application for Emergency Care Authorization (ECA). *Id.*, ¶¶ 2-4.

Plaintiffs bring claims under 42 U.S.C. § 1983 against Caseworker Pavilonis, Supervisor Dewberry, OCYF Department of Human Services's Deputy Director Mandeep Gill, and Allegheny County, for constitutional violations of substantive due process (Count I) and procedural due process (Count II), and for *Monell* liability (Count III). In addition, Plaintiffs bring a state-law claim for intentional infliction of emotional distress (Count IV).

Defendants move to dismiss the operative complaint (the First Amended Complaint). ECF 12. The motion is fully briefed and ready for disposition. For the

---

[1] Plaintiffs' complaint starts over at paragraph one under the factual allegations.

reasons that follow, the Court will grant the motion.

<u>DISCUSSION & ANALYSIS</u>

## I.    Defendants' procedural arguments fail.

The Court begins with addressing Defendants' procedural arguments regarding *Younger* and *Rooker-Feldman*, and finds that they do not bar the claims here.

*Younger Abstention.* As of the date that the motion to dismiss was filed, the state-court dependency proceedings were ongoing. *See* ECF 13-1 (state court docket sheet indicating that an adjudicatory hearing was scheduled for April 2, 2025). But because Plaintiffs seek only damages and not injunctive relief, the Court finds that abstention under *Younger* is not warranted. *See Borowski v. Kean Univ.*, 68 F.4th 844, 850 (3d Cir. 2023) ("If the claims in . . . a federal suit [in which *Younger* applies] are only for injunctive or declaratory relief, . . . a federal court must dismiss the case. Alternatively, if the federal lawsuit seeks only damages, then a federal court cannot dismiss the suit but may, in the exercise of its discretion, stay the case for the pendency of the state proceedings." (cleaned up)); *Peterson v. Allegheny Cnty.*, No. 21-78, 2022 WL 280948, at *12 (W.D. Pa. Jan. 31, 2022) (Wiegand, J.) (*Younger* abstention doesn't apply to a suit seeking only monetary damages for Section 1983 claims because "while it may be true that Plaintiffs could have raised certain federal constitutional challenges or defenses in the Family Court proceedings, they could not have asserted the particular claims for damages they assert here").

*Rooker-Feldman Doctrine.* Similarly, the Court finds that the *Rooker-Feldman* doctrine does not bar Plaintiffs' claims, given that Plaintiffs are only seeking damages related to the alleged due-process violations—not injunctive relief in the form of overturning the ECA or shelter-care orders. *See Calipo v. Erie Cnty. Off. of Child. & Youth Servs.*, 786 F. App'x 329, 332 (3d Cir. 2019) (*Rooker-Feldman* doctrine does not bar "claims regarding due process violations and alleged misconduct in

connection with the termination of [plaintiff's] parental rights"); *B.S. v. Somerset Cnty.*, 704 F.3d 250, 260 (3d Cir. 2013) (summarizing four requirements to be met for doctrine to apply, including that "the plaintiff is inviting the district court to review and reject . . . state[-court] judgments" (cleaned up)).

## II. Plaintiffs' Section 1983 claims (Counts I-III) fail.

Turning next to the claims at issue, Plaintiffs have not plausibly pled their Section 1983 claims.[2]

*Count I – Substantive Due Process.*  The Court finds that the complaint fails to state a substantive-due-process claim.  To plead a substantive-due-process claim, a plaintiff must allege that the social worker's conduct "reach[ed] a level of gross negligence or arbitrariness that . . . 'shocks the conscience.'"  *Miller v. City of Philadelphia*, 174 F.3d 368, 375-76 (3d Cir. 1999).  A state official must have information that "would have created an objectively reasonable suspicion" that a child has been abused or is in imminent danger of abuse; otherwise, removal of the child can constitute an arbitrary abuse of government power.  *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997).  "Reasonable suspicion is lacking when a child welfare agency has consciously disregarded a great risk that there had been no abuse."  *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 241 (3d Cir. 2013) (cleaned up).  "On the other hand, [courts have found] no substantive due process violation when removal was based on a report of child abuse that contained specific, credible, contemporaneous, and mutually consistent evidence[.]"  *Gajarov v. Allegheny Cnty. Off. of Child., Youth, & Fams.*, No. 20-1017, 2021 WL 140842, at *7 (W.D. Pa. Jan. 15, 2021) (Hornak, C.J.) (cleaned up).

Plaintiffs contend that Defendants did not have information that would create

---

[2] As the Court finds that the Section 1983 claims are not plausibly pled, the Court does not reach the issue of whether the individual Defendants are entitled to absolute immunity.

an objectively reasonable suspicion of abuse at the time that B.S. was removed. Specifically, the ECA petition included the following facts: (1) Plaintiffs' oldest child was removed in March 2022 due to injuries indicating that he was physically abused, (2) Plaintiffs' second-oldest child was also removed due to OCYF's inability to assure the child's safety, (3) Mr. Scholl pled guilty to Felony Endangering Welfare of Children (EWOC) and Ms. Airgood pled guilty to Misdemeanor EWOC in April 2024 and are both serving probation for five years, (4) the criminal orders pursuant to those criminal proceedings only permit Plaintiffs to see the two older children during supervised visits with OCYF, and (5) OCYF is unable to assure the safety of B.S. while in Plaintiffs' care.  ECF 11, ¶ 3.

Plaintiffs argue that the decision to remove B.S. based on these allegations was arbitrary and grossly negligent because there were no facts suggesting that B.S. himself was in imminent danger of abuse—and, to the contrary, the complaint alleges that evidence presented at permanency review hearings since January 2024 showed that there are no safety concerns for the older children when they are visiting their parents.  ECF 15, pp. 8-9, 14; ECF 11, ¶ 8.  The Court disagrees.

Even taking as true the fact that there was some evidence presented during the state dependency proceedings that "there were no safety concerns for the children while visiting with" Plaintiffs (ECF 15, p. 14) and that Plaintiffs "had received only positive reviews from the [OCYF]-contracted service providers tasked with supervising the visits with their two older children[,] (*id.* at 8), and also taking as true the ECA petition's failure to note that "B.S. is not subject to the criminal order[s]," (ECF 11, ¶ 8), the fact remained that, at the time of B.S.'s removal, Plaintiffs were only allowed supervised visits with their two older children, stemming from the removal of the oldest child, based on abuse, approximately two years and nine months prior to B.S.'s birth—which led to the removal of the second-oldest child and the criminal orders.  Further, Plaintiffs had pled guilty to EWOC approximately

nine months before B.S.'s removal.

Given this fairly recent history with respect to their two older children and the continued required supervised visits for those children, the decision to seek removal of B.S. does not "shock the conscience," and does not exceed negligence or deliberate indifference. *Compare Mulholland*, 706 F.3d at 243 (child welfare agency had reasonable suspicion to remove children based on plaintiff's listing on ChildLine—from ten years prior—as an indicated perpetrator of child abuse, despite plaintiff's argument that agency had several interactions with him without raising any concerns in the intervening time period; although "agency could have acted in a more deliberate and less sudden fashion by providing [the parents] the courtesy of letting them know that it intended to petition the juvenile court for removal of the children[,]" given the passage of time since he was listed on ChildLine and in light of the several cooperative interactions, "its failure to do so does not reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience'" (cleaned up)), *and B.S. v. Somerset Cnty.*, 704 F.3d 250, 268 (3d Cir. 2013) (caseworker's misrepresentation about child's weight, based on doctor's report, leading to child's removal, cannot be viewed as more than mere negligence), *with Croft*, 103 F.3d at 1126 (a "six-fold hearsay report by an anonymous informant" that was not corroborated by other evidence did not provide reasonable grounds for removal).

Put differently, the allegations in the complaint don't show that Defendants consciously disregarded a great risk that there would be no abuse.[3] *See Wolfhawk v.*

---

[3] While state law does not set the constitutional standard here, the Court disagrees with Plaintiffs' position that the removal of B.S. under the factual circumstances here is unsupported by Pennsylvania law (ECF 15, pp. 7-8). *See Int. of M.H.*, No. 1286-2019, 2019 WL 6716291 (Pa. Super. Ct. Dec. 10, 2019) (affirming dependency adjudication of newborn based on termination of parental rights as to the five other children, reports of sexual abuse committed by the parents against the two oldest children, and mother's history of substance abuse and criminal convictions); *In re R.W.J.*, 826 A.2d 10 (Pa. Super. Ct. 2003) (affirming emergency removal of newborn child because four other children were previously removed from mother's custody, one

*Schuylkill Cnty.*, No. 05-1984, 2005 WL 2810608, at *7 (M.D. Pa. Oct. 27, 2005) (caseworkers' conduct in seeking court intervention to assume custody of a newborn fails to shock the conscience where, *inter alia*, two of plaintiff's older children had been removed from her care following court proceedings); *Nin v. Luzerne Cnty.*, No. 17-802, 2020 WL 6143561, at *16 (M.D. Pa. Oct. 19, 2020) (removal of children based on suspected abuse of one sibling does not shock the conscience); *Abrantes v. Smith*, No. 23-1324, 2024 WL 3969685, at *7 (M.D. Pa. Aug. 28, 2024) (no substantive-due-process claim based on allegation that children were removed after teacher reported that younger child had bruise on her arm); *Grullon v. Admin. for Child.'s Servs.*, No. 18-3129, 2021 WL 981848, at *7 (S.D.N.Y. Mar. 16, 2021) (child welfare agency "is not precluded from considering the parent's pre-birth conduct in determining whether post-birth there is reason to believe that" child is in imminent danger).

 Accordingly, the Court will dismiss this claim.[4]

---

child died at the hands of her father, and mother failed to comply with the court-imposed requirements for her other children); *In Int. of Black*, 417 A.2d 1178 (Pa. Super. Ct. 1980) (prognostic evidence concerning care provided by parents to two children who had died previously was sufficient to declare newborn infant deprived, even though infant had never been in care and custody of his parents).

[4] Alternatively, even if Plaintiffs had stated a substantive-due-process claim, Defendants would have qualified immunity. This is so because the Court "cannot say that the right involved here was clearly established in light of the specific context of the case." *J.R. v. Lehigh Cnty.*, No. 9-6207, 2012 WL 12897435, at *6 (E.D. Pa. July 20, 2012) (cleaned up); *see also Brown v. Daniels*, 128 F. App'x 910, 915 (3d Cir. 2005) (complaint may be subject to dismissal under Rule 12(b)(6) based on qualified immunity "when the immunity is established on the face of the complaint" (cleaned up)).

Considering the specific allegations in the complaint, the Court frames the right as follows: the right not to have a newborn child removed from his parents' custody, pursuant to an emergency removal order, based on abuse of their oldest child two years and nine months prior, which led to EWOC convictions and removal of the two older children. "[F]or [Plaintiffs'] case to have legs [they] must show that the law was so well established at that time a reasonable caseworker would have understood that temporarily removing a child in those circumstances would violate substantive due

*Count II – Procedural Due Process.*  Plaintiffs fail to plead a procedural-due-process claim.  Plaintiffs' claim is premised on the fact that Defendants waited until B.S. was born to file the ECA petition, even though they were aware for months that Ms. Airgood was pregnant and even though the facts in the ECA petition were not only materially misleading but had all been known to Defendants since at least October 2024 (the date of the last permanency review hearing for the two older children).  ECF 11, ¶ 12.  When Plaintiffs requested that Defendants inform them of whether they intended to take custody of B.S., Defendants claimed they wouldn't know until after they "staffed" the issue.  *Id.*

Although Plaintiffs contend that Defendants "failed to engage in a collaborative process with the family prior to removing B.S.," (ECF 15, p. 17) and seem to be arguing that they were entitled to some sort of pre-deprivation notice given

---

process."  *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir. 2016), *as amended* (Mar. 21, 2016).

"Here, a reasonable caseworker would not have been sufficiently on notice, based on applicable decisional law from the Supreme Court, our Court of Appeals, or a robust consensus of the regional courts of appeal, that temporarily removing a child in the specific circumstances of this case . . . would violate substantive due process." *Gajarov*, 2021 WL 140842, at *10 (framing the right in terms of the temporary removal of a child "based solely on one doctor's report and a conversation with the parents who have advanced an alternate benign explanation for the injury and despite an evident language barrier").

In particular, none of the cases that Plaintiffs cite to in their brief (ECF 15, pp. 13-14 n.3) are sufficiently analogous to the circumstances of this case, which involves removal of a newborn child based on his siblings' recent dependency proceedings. Several of those cited cases do not even appear to address substantive-due-process violations (*see id.*, citing *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486 (3d Cir. 1997), *Spahr v. Collins*, No. 22-2787, 2024 WL 3738878 (3d Cir. Aug. 9, 2024), *Walthour v. Child & Youth Servs.*, 728 F. Supp. 2d 628 (E.D. Pa. 2010)).  And the other cited cases found *no* substantive-due-process violations (*see id.*, citing *Miller*, 174 F.3d 368, *Hatfield v. Berube*, 714 F. App'x 99 (3d Cir. 2017), *B.S.*, 704 F.3d 250). So none of those cases put the caseworkers "on notice that their conduct violated substantive due process." *Mammaro*, 814 F.3d at 171.

the circumstances of this case,[5] "initiating child custody proceedings by *ex parte* orders is generally constitutional if a prompt post-deprivation hearing is held." *Dennis v. Dejong*, 557 F. App'x 112, 117 (3d Cir. 2014) (cleaned up) (rejecting plaintiffs' argument that their procedural due process rights were violated because they weren't provided with a pre-deprivation hearing before their child was placed in foster care upon his discharge from the hospital, even though child welfare agency knew in advance that it would seek protective custody of the child); *see also Miller*, 174 F.3d at 374 ("We do not discount parents' strong interest in the custody of their children, but requiring that a parent or his attorney be included in emergency pre-deprivation hearings 'when available' or 'when at hand' would build delay into these time-sensitive hearings and encourage litigation over 'availability.' Such a requirement would thus inhibit, deter and, at times, subvert the crucial function of *ex parte* custody hearings—protecting children who are in imminent danger of harm.").

Plaintiffs had the opportunity to be heard at the shelter-care hearing days after B.S. was removed. The state-court records show that Plaintiffs, along with their attorneys, were both present at that hearing. ECF 13-2. Accordingly, Plaintiffs were provided "with the opportunity to be heard in a meaningful time and manner as constitutionally required." *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *7 (E.D. Pa. Dec. 8, 2020); *see also Brown v. Daniels*, 290 F. App'x 467, 473 (3d Cir. 2008) (dismissing procedural-due-process claim because there was no indication that, had the hearing been conducted earlier, a

---

[5] To the extent that Plaintiffs are alleging violations of state law (*see* ECF 15, p. 17 (arguing that Defendants "ignored Family Finding" required under state law and violated the "trauma-informed judicial practice" as set forth in the Pennsylvania Dependency Benchbook)), "Section 1983 does not provide a cause of action for violations of state statutes." *Smith v. Northampton Cnty.*, No. 22-3788, 2023 WL 1767765, at *8 (E.D. Pa. Feb. 3, 2023) (quotation omitted).

different result would have been reached).

The Court will therefore dismiss this claim.

***Count III – Monell liability.***  The *Monell* claim, which appears to be premised on a failure-to-train theory, fails because Plaintiffs have not alleged an underlying constitutional violation, as noted above.  *See A.J. v. Lancaster Cnty.*, 826 F. App'x 248, 251 (3d Cir. 2020).  The Court thus will dismiss this claim too.[6]

\*    \*    \*

Accordingly, Defendants' motion to dismiss (ECF 12) is **GRANTED**.  The Court dismisses all federal claims and will decline to exercise supplemental jurisdiction over the one state-law claim. The Court finds that the defects outlined above are legal in nature and it would probably be futile to allow further amendment. That said, if Plaintiffs believe that there is some way in which they can amend their complaint to state claims, based on the above discussion, they may file a motion for leave to amend, with the proposed amended complaint attached.  Thus, the dismissal here will be without prejudice, for now.  Any motion for leave to amend must be filed by **August 19, 2025**.  If no motion is filed by then, the Court will convert the dismissal to one with prejudice.

Dated: August 5, 2025                            BY THE COURT:

                                                 /s/ J. Nicholas Ranjan
                                                 United States District Judge

---

[6] There are no allegations in the complaint indicating that Deputy Director Gill was personally involved in the alleged constitutional violations.  To the extent that Plaintiffs are asserting a theory of supervisory liability against Deputy Director Gill, Plaintiffs fail to state a claim for supervisory liability.  *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (discussing the two theories of supervisory liability).