**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RYAN SCHOLL, BREANNA AIRGOOD, individually, and as parents and natural guardians of B.S., | ) | 2:25-cv-2 |
| Plaintiffs, | ) | |
| v. | ) | |
| KELLY PAVILONIS *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

**J. Nicholas Ranjan, United States District Judge**

The parties know this case's history well. B.S., the child of Plaintiffs Ryan Scholl and Breanna Airgood, was born on December 31, 2024. ECF 31, ¶ 8. At the time of B.S.'s birth, Mr. Scholl and Ms. Airgood had convictions for Endangering Welfare of Children (EWOC) based on an incident involving one of their two older children. *Id.* ¶ 38. Based on those convictions, they were serving probation and had only supervised visitations with their older children. *Id.*

On January 2, 2025, caseworkers at the Allegheny County Office of Children, Youth and Families (OCYF), Kellie Pavilonis and her supervisor Candice Dewberry, filed an application for Emergency Care Authorization (ECA). *Id.* ¶ 9. OCYF removed B.S. from Ms. Airgood's physical custody while she remained admitted at the hospital. *Id.* ¶ 11.

Plaintiffs are now on their Second Amended Complaint. Like their previously filed complaints, the SAC brings claims under 42 U.S.C. § 1983 against Caseworker Pavilonis, Supervisor Dewberry, OCYF, and Allegheny County, for constitutional violations of substantive due process (Count I) and procedural due process (Count II). Plaintiffs also bring a *Monell* claim against OCYF (Count III), and a state-law claim

for intentional infliction of emotional distress against all Defendants (Count IV).

These claims have been considered by this Court before. The Court previously dismissed Plaintiff's First Amended Complaint. *See* ECF 18. In its prior Order, the Court reasoned that Plaintiffs' due-process claims failed because Defendants' actions didn't shock the conscience and Plaintiffs received a prompt post-deprivation hearing. *See id.* at 4–8. The Court alternatively noted that Defendants had qualified immunity. *See id.* at 6 n.4.

When it dismissed the FAC, the Court noted that amendment was likely futile, but it let Plaintiffs file a motion for leave explaining how they could amend their claims. That motion was eventually granted. Defendants now move to dismiss the SAC. ECF 34.

## DISCUSSION & ANALYSIS[1]

The SAC supplements Plaintiffs' allegations with transcript excerpts and facts from state-court proceedings. After a careful review, the Court concludes these additions do not materially affect its prior analysis. Plaintiffs still fail to state plausible due-process claims. And without a plausible due-process claim, Plaintiffs' *Monell* claim fails. The Court further declines to exercise supplemental jurisdiction over the IIED claim.

### I. Plaintiffs' substantive due-process claim fails.

Plaintiff sues all four Defendants for violating their substantive due-process

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Any reasonable inferences should be considered in the light most favorable to the plaintiff. *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

rights. Their claim fails as to Allegheny County and OCYF. The County and OCYF's liability is limited to Plaintiffs' *Monell* claim, as discussed below. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Their claim also fails as to Defendants Pavilonis and Newberry. The alleged conduct does not "shock the conscience." And even if it did, Defendants Pavilonis and Newberry would have qualified immunity.

**a. Defendants' conduct does not "shock the conscience."**

To plead a substantive-due-process claim based on a social worker's removal of a child, a plaintiff must allege that the social worker's conduct "reach[ed] a level of gross negligence or arbitrariness that . . . 'shocks the conscience.'" *Miller v. City of Philadelphia*, 174 F.3d 368, 375–76 (3d Cir. 1999). A state official must have information that "would have created an objectively reasonable suspicion" that a child has been abused or is in imminent danger of abuse; otherwise, removal of the child can constitute an arbitrary abuse of government power. *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997). State officials lack reasonable suspicion when they "consciously disregard[] a great risk that there ha[s] been no abuse." *Mulholland v. Government County of Berks*, 706 F.3d 227, 241 (3d Cir. 2013).

Plaintiffs contend that Defendants did not have information that would create an objectively reasonable suspicion of an imminent danger of abuse at the time that B.S. was removed. The ECA petition included the following facts: (1) Plaintiffs' oldest child was removed in March 2022 due to injuries indicating that he was physically abused, (2) Plaintiffs' second-oldest child was also removed due to OCYF's inability to assure the child's safety, (3) Mr. Scholl pled guilty to Felony Endangering Welfare of Children (EWOC) and Ms. Airgood pled guilty to Misdemeanor EWOC in April 2024 and are both serving probation for five years, (4) the criminal orders pursuant to those criminal proceedings only permit Plaintiffs to see the two older children

during supervised visits, and (5) OCYF is unable to assure the safety of B.S. while in Plaintiffs' care. ECF 35, at 4.[2]

Plaintiffs argue that the decision to remove B.S. based on these allegations was unconstitutional because it was a "policy-based removal without an individualized assessment" of whether B.S. was in imminent danger of abuse. ECF 39, at 5. To demonstrate that B.S. wasn't in imminent danger, the SAC provides several pages of state-court proceeding transcripts. In those transcripts, Caseworker Pavilonis states that there was no evidence from Plaintiffs' supervised visits with their older children that they posed safety risks to their older children at that time. ECF 31, ¶ 38.

Even accepting all of this as true, Plaintiffs still do not state a substantive due-process claim. As the Court stated in its previous Order, even taking as true all the evidence from the state-court proceedings that there were no safety concerns for the older children during their supervised visits with Plaintiffs, Defendants still had an "objectively reasonable suspicion" that B.S. was in imminent danger of abuse. *Croft*, 103 F.3d at 1126; ECF 18, at 4–6. Specifically, as conceded in the SAC and integral documents, at the time of B.S.'s removal, Plaintiffs had pled guilty to EWOC, and Plaintiffs were only allowed supervised visitations with their older children. It does not "shock the conscience" that Defendants removed B.S. on those facts. *Compare Mulholland*, 706 F.3d at 243 (child welfare agency had reasonable suspicion to remove children based on plaintiff's listing on ChildLine—from ten years prior—as an indicated perpetrator of child abuse, despite plaintiff's argument that agency had several interactions with him without raising any concerns in the intervening time period), *with Croft*, 103 F.3d at 1126 (a "six-fold hearsay report by an anonymous

---

[2] The SAC does not provide the full text of the ECA petition, unlike Plaintiffs' original Complaint and FAC. *See* ECF 2, ¶ 11; ECF 11, ¶ 3. The Court takes judicial notice of the ECA petition because it is the heart of Plaintiffs' constitutional claims, its accuracy isn't in dispute, and there is no concern that Plaintiffs' lack notice of its contents.

informant" that was not corroborated by other evidence did not provide reasonable grounds for removal).

The Third Circuit's recent decision in *O'Bryant v. New Jersey Division of Child Protection & Permanency* does not change the Court's conclusion. No. 23-1950, 2026 WL 2728461 (3d Cir. Sep. 16, 2026). In *O'Bryant*, the Third Circuit concluded that it could not consider one of the plaintiff's specific criminal histories because it was not properly before the court on the motion to dismiss. 2026 WL 2728461, at *5. Further, the plaintiff in that case was allowed unrestricted access to his older child following his child endangerment case. *Id.* at *10. As a result, the Third Circuit reasoned that the child welfare agency had already concluded that the plaintiff was not a danger to his children. *Id.* Not so here. It's undisputed that Plaintiffs have criminal histories for EWOC, an offense that correlates to a reasonable suspicion of subsequent abuse, and that Plaintiffs were only allowed supervised visits with their older children at the time of B.S.'s removal.

Finally, Plaintiffs' argument that B.S.'s removal was "policy-based" isn't dispositive. ECF 39, at 5. This argument comes from *Mort v. Lawrence County Children and Youth Services*, in which the defendants removed the plaintiff's child because the plaintiff tested positive for a minuscule amount of opiates. *See* No. 2:10-cv-1438, 2011 WL 3862641, at *2–3 (W.D. Pa. Aug. 31, 2011) (Cercone, J.). In denying the motion to dismiss, Judge Cercone reasoned that the defendants had "implement[ed] a policy that separates a mother and a newborn child without an individualized assessment of the facts and circumstances at hand *and* proceed[ed] expeditiously and blindly based on a single piece of information *that does not supply reasonable suspicion of child endangerment*." *Id.* at *10 (emphasis added). The cases in this district applying this reasoning have not confronted the situation here: an alleged policy that resulted in removing a child whose parents had EWOC convictions and probation conditions authorizing only supervised visits with their older children.

*See*, *e.g.*, *Bower v. Lawrence Cnty. Child. & Youth Servs.*, No. 2:11-cv-931, 2011 WL 5523712 (W.D. Pa. Nov. 14, 2011) (McVerry, J.) (a positive drug test for a small amount of opiates); Complaint, *John-Marc v. Allegheny County*, No. 21-214 (W.D. Pa. Feb. 21, 2021), ECF No. 1 (prior adjudicated dependency proceedings and *pending* criminal charges).

Put differently, the allegations in the complaint don't show that Defendants consciously disregarded a great risk that there would be no abuse. *See Wolfhawk v. Schuylkill County*, No. 05-1984, 2005 WL 2810608, at *7 (M.D. Pa. Oct. 27, 2005) (caseworkers' conduct in seeking court intervention to assume custody of a newborn fails to shock the conscience where, *inter alia*, two of plaintiff's older children had been removed from her care following court proceedings); *Nin v. Luzerne County*, No. 17-802, 2020 WL 6143561, at *16 (M.D. Pa. Oct. 19, 2020) (removal of children based on suspected abuse of one sibling does not shock the conscience); *Grullon v. Admin. for Child.'s Servs.*, No. 18-3129, 2021 WL 981848, at *7 (S.D.N.Y. Mar. 16, 2021) (child welfare agency "is not precluded from considering the parent's pre-birth conduct in determining whether post-birth there is reason to believe that" child is in imminent danger).

**b. Alternatively, Defendants Pavilonis and Newberry have qualified immunity.**

Even if Plaintiffs had stated a substantive due-process claim, Defendants Pavilonis and Newberry would have qualified immunity.[3] Child welfare agency officials performing discretionary functions are entitled to qualified immunity unless

[3] The Court considers qualified immunity at this motion-to-dismiss stage in light of *O'Bryant*. The Third Circuit has cautioned that a complaint should be subject to dismissal under Rule 12(b)(6) based on qualified immunity only "when the immunity is established on the face of the complaint." *Brown v. Daniels*, 128 F. App'x 910, 915 (3d Cir. 2005) (citation modified). But in *O'Bryant*, the Third Circuit dismissed similar claims at the motion-to-dismiss stage based on qualified immunity. *See* 2026 WL 2728461, at *11–12.

the specific right at issue "was clearly established at the time of the alleged violation." *O'Bryant*, 2026 WL 2728461, at *11. To determine whether the right was clearly established, the Court must first define the right "in light of the specific context of the case." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165–66 (3d Cir. 2021). Then, the Court must look to whether that right was clearly established by Supreme Court or Third Circuit case law. *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 170 (3d Cir. 2016); *O'Bryant*, 2026 WL 2728461, at *11–12.

Considering the specific facts of this case, the Court defines the right as follows: *the right not to have a newborn child removed from his parents' custody, pursuant to an emergency removal order, based on the parents' EWOC convictions for abuse of their oldest child two years and nine months prior, causing removal of the two older children and entry of criminal probation orders allowing only supervised visits with the two older children.* This right was not clearly established as of January 2025.

First, the Supreme Court "has never found a substantive due process violation when state agencies temporarily remove a child, whatever the circumstances of the removal." *Mammaro*, 814 F.3d at 170. So Supreme Court precedent does not clearly establish the right here.

Second, Third Circuit cases before January 2025 are not "sufficiently analogous" to clearly establish the right. *O'Bryant*, 2026 WL 2728461, at *11. The Third Circuit had not "addressed when a criminal charge or child abuse case provides insufficient indicia of reliability for emergency removal" in any capacity until *O'Bryant* on September 16, 2026. *Id.* Accordingly, Defendants were not on notice that their conduct violated any constitutional right in January 2025.

Third, Plaintiffs' citations to a couple of unreported district court cases are unavailing. It's doubtful that non-precedential district court cases can clearly establish a constitutional right. But even if they could, the cases Plaintiffs cite present different facts and differently defined rights. *See e.g.*, *Bower*, 2011 WL

5523712 (removing a child because the parent tested positive for a small amount of opiates); *John-Marc*, 2021 WL 6051445 (removing a child based on dependency proceedings for the parent's prior children based on an allegation of abuse and *pending* criminal charges).

In sum, Plaintiffs' substantive due-process claim fails. The alleged conduct doesn't "shock the conscience." And even if it did, the claim would be barred by qualified immunity.

## II. Plaintiffs' procedural due-process claim fails for similar reasons.

Plaintiffs' procedural due-process claim includes many facts related to Defendants' alleged delay and uncooperativeness in the older children's court proceedings. *See* ECF 31, ¶¶ 66–86. This is immaterial to the procedures applied to B.S.'s removal. To remove B.S., Defendants filed an *ex parte* ECA on January 2, 2025. *Id.* ¶¶ 9–11. Plaintiffs then received a post-deprivation hearing four days later. *Id.* ¶ 38. The SAC's transcript excerpts make clear that Plaintiffs were given an opportunity to be heard at that hearing. *Id.* The operative question is whether the procedure of emergency removal followed by a prompt post-deprivation hearing was constitutional under the circumstances. It was.

In *O'Bryant*, the Third Circuit announced for the first time that "[t]he temporary removal of children from their parents can occur without a pre-deprivation hearing only when swift action is necessary for securing the children's safety." 2026 WL 2728461, at *12. "In those emergency situations, where the child is in imminent danger of abuse, a post-deprivation hearing satisfies procedural due process." *Id.*

This case is no different. Because the Court already concluded above that Defendants had objectively reasonable grounds to believe B.S. was in imminent danger, Plaintiffs' post-deprivation hearing four days later satisfied due process. And even if it didn't, Defendants would be entitled to qualified immunity because their

conduct pre-dated *O'Bryant.*[4] Therefore, Plaintiffs' procedural due-process claim fails.

**III. Plaintiffs' *Monell* claim fails.**

Plaintiffs' *Monell* claim fails because Plaintiffs do not state an underlying constitutional claim. *See A.J. v. Lancaster County*, 826 F. App'x 248, 251 (3d Cir. 2020). But even if they did, Plaintiffs' *Monell* claim would be inadequately pled. Despite the SAC's allusions to a policy, the *Monell* claim is based on a "failure-to-train" theory. ECF 31, ¶ 89. This theory is conclusory. The SAC lacks facts suggesting "deficiencies existed at the time of [B.S.'s removal], that the deficiencies amounted to deliberate indifference to [Plaintiffs'] constitutional rights, or that the deficiencies were closely related to the alleged constitutional violation." *Est. of Kamal ex rel. Kamal v. Township of Irvington*, 790 F. App'x 395, 398 (3d Cir. 2019).

**IV. Plaintiffs' federal claims must be dismissed with prejudice.**

Because Plaintiffs' federal claims fail, the Court must next consider whether they should be granted an opportunity to amend. They should not. The Court already gave Plaintiffs leave to amend once. ECF 28. But they still haven't stated any plausible federal claims. That's because the defects in these claims are legal in nature. Further amendment would thus be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

* * *

Accordingly, Defendants' motion to dismiss (ECF 34) is **GRANTED**. The

---

[4] The right at issue would be formulated as follows: *the right to a pre-deprivation hearing before the removal of a newborn child based on the parents' EWOC convictions for abuse of their oldest child two years and nine months prior, causing removal of the two older children and entry of criminal probation orders allowing only supervised visits with the two older children.* At the time of Defendants' conduct in January 2025, neither the Supreme Court nor the Third Circuit had ruled on when a pre-deprivation hearing, rather than a post-deprivation hearing, is required in the context of an emergency application to remove a child. *See O'Bryant*, 2026 WL 2728461, at *12. So this right would not have been clearly established.

Court dismisses all federal claims with prejudice and will decline to exercise supplemental jurisdiction over the one state-law claim, and so dismisses that claim without prejudice. The Clerk of Court shall mark this case as **CLOSED**.

Dated THIS 3rd Day of November, 2026

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge